# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

FILED
APR 09 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
Apple iPhone Cellular Telephone, Model: A1661, ) Case No. 19MJ1442
SIM SN: 8901150327/7124328318 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances; |
| 21 U.S.C. § 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

☐ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Kimberly M. Hesse
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/9/19

*Judge's signature*

City and state: San Diego, CA     Honorable Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is described below:

> Apple iPhone Cellular Telephone
> Model: A1661
> SIM SN: 8901150327/7124328318,
> (the **"Target Telephone"**),

Currently in the possession of Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of December 6, 2017 through March 6, 2018:

    a. tending to identify attempts to transport methamphetamine and/or cocaine and/or heroin and/or any other controlled substance from the United States to Mexico;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine and/or cocaine and/or heroin, and/or any other controlled substance from the United States to Mexico;

    c. tending to identify co-conspirators, criminal associates, or others involved the smuggling of methamphetamine and/or cocaine and/or heroin and/or any other controlled substance from the United States to Mexico;

    d. tending to identify travel to or presence at locations involved the smuggling of methamphetamine and/or cocaine and/or heroin and/or any other controlled substance from the United States to Mexico, such as stash houses, load houses, or delivery points;

      e. tending to identify the user of, or persons with control over or access to, the subject telephone and/or;

      f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Kimberly M. Hesse, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search the following:

> Apple iPhone Cellular Telephone
> Model: A1661
> SIM SN: 8901150327/7124328318,
> (the "**Target Telephone**")

as further described in Attachment A, which is currently in the possession of Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154, within the Southern District of California, and to seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as set forth in Attachment B.

2. The **Target Telephone** was seized from Gilberto GONZALEZ ("GONZALEZ") on March 6, 2018, at the time of his arrest at the Otay Mesa, California Port of Entry for importing 5.74 kilograms (12.65 pounds) of methamphetamine, 7.74 kilograms (17.06 pounds) of heroin, and 12.16 kilograms (26.80 pounds).

3. Based on the information below, there is probable cause to believe that a search of **Target Telephone** will produce evidence of the aforementioned crimes, as described in Attachment B. I previously obtained a search warrant for the **Target Telephone**, *see* 18-MJ-1469 (S.D. Cal.), and seek this authority so that I can again examine its contents, within the requested date range. Except for information below in the section titled "Prior Attempts to Obtain This Evidence," this application and the requested warrant are substantively the same as my March 2018 application.

4. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the

**Target Telephone**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent with the United States Department of Homeland Security, as a Special Agent for Homeland Security Investigations ("HSI"). I have held my current position with HSI since September 2016.

6. I am a graduate of the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). During the course of my training at FLETC, I learned the fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence, all in relation to violations of the United States Code.

7. Prior to joining HSI, I was an Assistant Prosecuting Attorney in both Detroit and Lansing, Michigan, for seven years. During my tenure as a prosecutor, I conducted numerous felony jury trials, including but not limited to narcotics trafficking, firearms offenses and homicides.

8. Currently, I am assigned to a Narcotics Group in San Ysidro, California. My duties include the investigation of narcotics-related violations of Title 21 of the United States Code and the California Health and Safety Code. I primarily investigate violations of the United States Code that stem from the international border between Mexico and the United States, including drug smuggling. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents who have extensive experience in narcotics smuggling investigations. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with

particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

9. As a Special Agent with HSI and throughout my tenure as a prosecutor, I have participated in and conducted investigations of violations of various state and federal criminal laws, including distribution of controlled substances, use of communication facilities to commit narcotic offenses, importation of controlled substances, and conspiracy to import, possess and distribute controlled substances. These investigations resulted in the arrests and prosecutions of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine. Through these investigations, prosecutions and training; I am familiar with the operations of illegal international DTO in various parts of the world, including Mexico.

10. By virtue of my employment as a Special Agent with HSI, I have performed various tasks and training, which include, but are not limited to:

   a. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

   b. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances; and

   c. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics.

11. Through the course of my training, experience, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers, electronic media storage devices and portable radios to maintain communications with co-conspirators to further their criminal activities. The smuggling and trafficking of narcotics generate many types of evidence including, but not

limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular, digital, and satellite telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular, digital, and satellite telephones.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

   d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

   e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

   f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug

4

proceeds; and

g. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

13. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

14. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to identify attempts to import methamphetamine or other controlled substances from Mexico into the United States and to distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

5

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

15. On March 6, 2018 at approximately 0700 hours, GONZALEZ, a United States Citizen, attempted to enter the United States from Mexico through the Otay Mesa, California, Port of Entry. GONZALEZ was the driver, sole occupant, and registered owner of a 2014 white Honda Accord bearing a California license plate.

16. A U.S. Customs and Border Protection ("CBP") Officer assigned to the Otay Mesa Port of Entry vehicle Sentri inspection lane made contact with GONZALEZ. GONZALEZ presented a Sentri card as his entry document. GONZALEZ gave two negative customs declarations and indicated that he was headed to San Diego. The CBPO queried GONZALEZ in a computer database and received a generated alert. GONZALEZ was referred to the vehicle secondary lot for further processing.

17. At approximately 0706 hours, a CBP Officer assigned to the Otay Mesa Port of Entry vehicle secondary lot screened the white Honda Accord with a Z-portal x-ray machine. The CBPO detected anomalies within the rear driver-side quarter panels, the rear passenger-side quarter panels, and within the back-seat backrest area

18. At approximately 0710 hours, a Canine Enforcement Officer, with an assigned Human/Narcotics Detection Dog, was conducting roving operations at the Otay

Mesa Port of Entry. The Canine Enforcement Officer was called to the Z-portal to screen the white Honda Accord. The Detection Dog alerted to a trained odor in the rear passenger-side quarter panel of the vehicle. The Canine Enforcement Officer notified secondary lot officers of the alert.

19. At approximately 0720 hours, a CBP Officer assigned to the Otay Mesa Port of Entry secondary lot conducted a 7-point inspection on the white Honda Accord. The Officer discovered nine packages in the right rear quarter panel, six packages in the left rear quarter panel, two packages on the left side back seat, two packages in the right side rear back-seat, five packages in the right backrest area of the back-seat, and three packages in the left backrest area of the back-seat. In total, the Officer found twenty-seven packages concealed inside of the vehicle. The CBP Officer field-tested all twenty-seven packages: six blue packages weighing 7.74 kilograms (17.06 pounds) field-tested positive for the characteristics of heroin, ten packages weighing 12.16 kilograms (26.80 pounds) field-tested positive for the characteristics of cocaine, and eleven packages weighing 5.74 kilograms (12.65 pounds) field-tested positive for the characteristics of methamphetamine.

20. GONZALEZ was arrested and the **Target Telephone** was seized from his person.

21. Based upon my experience and investigation in this case, I believe that GONZALEZ, as well as other persons as yet unknown, were involved in the importation of narcotics. Based upon my experience and training, and in consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also believe GONZALEZ used the **Target Telephone** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances, and to otherwise further the conspiracy both inside and outside the United States. Further, I believe that information relevant to the narcotics smuggling activities of GONZALEZ and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, location data, and other digital information are stored in the memory

7

of the **Target Telephone**

22. Finally, I know that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this requires planning and coordination in the days and weeks and often months prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Based on my training and experience, individuals such as GONZALEZ will attempt to minimize the amount of time they were involved in their smuggling activities and often times are actually involved for weeks and months longer than they claimed to be involved. Given those facts, I respectfully request permission to search the **Target Telephone** for items listed in Attachment B beginning on December 6, 2017, up to and including the entire day of March 6, 2018.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all

8

of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

26. On March 29, 2018, I obtained a search warrant to search the **Target Telephone**. *See* 18-MJ-1469 (S.D. Cal.) That application was based on the same showing of probable cause, and sought the same search authority, as this application. I conducted a review of the **Target Telephone**, within the authorized date range, and prepared a report identifying items that were subject to seizure. However, I did not digitally "seize" items and prepare an electronic file containing my seizure.

27. Given that the time to inspect the **Target Telephone** has lapsed since I prepared my report, I seek this authority so that I can re-examine the **Target Telephone**, for the same date range I previously requested, to digitally seize items subject to seizure. I anticipate seizing digitally the items that I described in my report detailing my prior search, and any items that, with the benefit of additional investigation (*e.g.*, obtaining cell-site data about the **Target Telephone**) are now understood as evidence falling within the scope of Attachment B.

28. I am aware generally of the contents of the **Target Telephone** that fall within the authorized date range from my prior search of the device, but I have not relied on any of that information here.

## CONCLUSION

29. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that the **Target Telephone** was used to facilitate the offense of importation of controlled substances. The **Target Telephone** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of 21 U.S.C. §§ 952, 960, and 963.

30. Because **Target Telephone** was seized immediately during the investigation of GONZALEZ's smuggling activities and has been securely stored, there is also probable cause to believe that evidence of the illegal activities committed by GONZALEZ, as described in Attachment B, continues to exist on the **Target Telephone**.

31. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Telephone**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Kimberly M. Hesse
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 9th day of April, 2019.

THE HON. BARBARA L. MAJOR
United States Magistrate Judge